PUIGDOLLERS, PLAINTIFF AND APPELLANT, *v.* MONROIG, DEFENDANT AND APPELLEE.

APPEAL from the District Court of San Juan, Section 2, in an Action for Provisional Support.

No. 1787.—Decided April 22, 1918.

SUPPORT—ALIMONY.—The defendant having moved to be relieved from the payment of the alimony which he was adjudged to pay because the evidence showed that there was no further need therefor, it was held that the sum of fifty dollars fixed as the plaintiff's alimony was not proportional to the

means of the defendant and the needs of his divorced wife and therefore that instead of reducing or revoking the alimony it should be increased to seventy-five dollars, which does not exceed one-third of the defendant's income.

ID.—ID.—It is immaterial whether the father of a divorced woman is in good financial circumstances, for it is not he but her former husband who is required to comply with the provisions of section 177 of the Civil Code.

The facts are stated in the opinion.

*Mr. Juan de Guzmán Benítez* for the appellant.

*Messrs. Eduardo Acuña* and *Ramón Falcón* for the appellee.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

In an action for divorce in which judgment was rendered in favor of Georgina Puigdollers y Molina for cruelty on the part of her husband, Antonio Monroig y Obrador, the District Court of San Juan, Section 2, entered an order on January 10, 1906, adjudging that defendant Antonio Monroig pay to plaintiff Georgina Puigdollers $50 monthly as alimony from the date of the filing of the complaint.

Two years later, or on March 31, 1908, defendant Monroig filed a motion praying the said court to set aside the order allowing alimony to Georgina Puigdollers and on April 11, 1908, the court made the following ruling:

"In this case the defendant appeared by his attorney and moved the court to enter an order revoking and setting aside the alimony granted the plaintiff by the judgment of January 10, 1906, on the ground that the said plaintiff had received the sum of $5,785.95 and thereby improved her financial condition.

"The plaintiff opposed the motion, and alleged that although she received the said sum in the action brought by her against the defendant for the liquidation and delivery of the ganancial property, the said sum, after deducting attorney fees, court costs, etc., was reduced to $1,665.88, and further alleged that she was then in the Ursuline Seminary of New Rochelle, N. Y., where she paid $45 monthly, besides spending $20 monthly for clothes, etc.

"The spirit of the law is that the guilty spouse in a divorce case shall be compelled to support the innocent spouse when the latter is in need of support and observes proper conduct.

"Alimony in the present case was fixed at $50 a month and the circumstances, in the opinion of the court, have not changed.

"The amount received by the plaintiff as ganancial property has been greatly reduced and, if invested at interest, is inadequate for her support. Moreover, she has acted in a most circumspect manner, has not contracted a second marriage and has entered a seminary where she studies and pays board, $50 a month plus $15 or $20 which she may receive as interest on that capital being deemed a sum necessary for the support of the plaintiff.

"And further considering that the defendant is possessed of ample means, the court overrules the motion to revoke the alimony allowed the plaintiff by the judgment of January 10, 1906."

On March 3, 1917, Antonio Monroig filed another motion also praying the court to set aside its order requiring him to pay $50 monthly to his former wife, Georgina Puigdollers, alleging that Antonio Puigdollers, the father of Georgina, had declared that he owned property worth more than $28,000, which, in the absence of proof to the contrary, belonged to the conjugal partnership of Puigdollers and Serafina Molina, recently deceased; that therefore half of the capital declared by the father must be divided among the children, Georgina thus receiving a sum which, added to the sum received as the result of the liquidation of the conjugal partnership with Antonio Monroig, amounts to more than $5,000, enabling her to live on her own income.

Georgina Puigdollers opposed this new attempt to take away her alimony, alleging that the court took into account the amount received by her from the liquidation of the conjugal partnership when it awarded her $50 a month as alimony, and that in so far as concerns the maternal inheritance, her share was only $234.83, as shown by deed No. 6 of February 8, 1916, for the partition of the estate of Serafina Molina de Puigdollers.

The contestant further alleged that she not only had to support herself but also had to attend to the recuperation of her health which was impaired by the cruel treatment received by her from her husband during their marriage;

that the cost of living is much greater than it was when the alimony was fixed, and that as a result of the prosperous condition of the sugar industry and of the valuable sugar factory (Central Juanita of Bayamón) of which he is the principal co-owner, Monroig's wealth has greatly increased since 1908, wherefore the contestant prayed not only that the motion should be overruled, but that her alimony should be increased to at least $75 from the month following the decision.

On December 3, 1917, the court rendered judgment declaring the obligation of Antonio Monroig to pay $50 monthly as alimony to Georgina Puigdollers extinguished as from that date, without special imposition of costs. From that judgment the party aggrieved took the present appeal to this court.

The statute applicable to the case for the decision of the appeal is section 177 of the Civil Code, cited by the appellant as violated, which reads as follows:

"If the divorced wife, in whose favor judgment was rendered, has not sufficient means of subsistence, the district court may allow her, in its discretion, an alimony out of the property of her divorced husband, which alimony shall not exceed one-third of his income.

"The alimony shall be revoked if it shall become unnecessary, or if the divorced wife contracts a second marriage."

As Georgina Puigdollers has not contracted a second marriage, the burden is upon Monroig to show that the alimony which he seeks to have revoked has become unnecessary.

Monroig introduced two affidavits in evidence, one of his attorney, Ramón Falcón, and one of Angel Rosa. Falcón avers that since 1907 Georgina Puigdollers has been in New York, where the cost of living is greater than in Porto Rico; that at that time she was not in a sanatorium, nor had it been proved that she suffered from any physical ailment as a consequence of cruel treatment received from her former husband, and that it is publicly known that Antonio Puig-

dollers, her father, leads a good and honest life and spends the greater part of his income in attending to his children's needs. The affidavit of Angel Rosa avers that during his stay in New York he observed that Georgina Puigdollers was living there in great luxury in a comfortable house the rent of which was much more than she could pay with an allowance of $50, and frequently attended places of amusement and recreation which it would be impossible for a person to attend with no other means than her alimony.

Monroig did not submit evidence to show what capital Georgina Puigdollers inherited from her mother, or what income that capital brought her.

The affidavits of Attorney Falcón and Angel Rosa show nothing conclusively against the need for the alimony which Georgina Puigdollers has been receiving and anything which they may contain in favor of the material allegation of the motion is completely offset by the affidavits which the contestant offered in evidence. These two affidavits were made by Antonio Puigdollers, the father of Georgina. In one of them Puigdollers avers that the alimony of $50 which his daughter receives from Antonio Monroig is insufficient for her expenses, as the payment of $10 weekly for board and lodging consumes nearly the whole amount, leaving nothing for laundry, clothes and other necessary living expenses, to say nothing of medical attendance; that she had to go to New York because the state of her health demanded it and because it was easier for her to live there with her sister Josefina and divide the common expenses between the two; that on the death of Serafina Molina Georgina's inheritance, amounted only to an interest of $234.83 in a house at No. 39 Cruz Street of this city, which interest the affiant purchased for that amount payable in four years, or on February 2, 1920, with interest at 1 per cent monthly; that he had also advanced to his daughter Georgina on account of her legitim the sum of $500, to be paid also on Feb-

ruary 2, 1920, and to bear interest at 1 per cent monthly in the meantime, so that he remitted to her each month on account of these debts the sum of $7.34, which, added to the alimony of $50, made a total of $57.34, a sum insufficient to cover her most urgent needs, and that the least which Georgina required to live on is $75.   In the other affidavit Puigdollers avers that of the balance of $1,665.88 remaining to Georgina from the amount received as her share of the ganancial property, the sum of $165.88 was used to pay off some small debts and the balance of $1,500, which had been placed out at interest, was returned on January 13, 1915, at which time Georgina owed the affiant $600 for monthly advances of from $15 to $20 which he had made, and this sum was paid to him, leaving only $900 which, since January 15, 1915, she has been spending to cover her necessary expenses on account of the insufficiency of her alimony, so that for some time past she has had nothing but her alimony of $50 and the $7.34 which the affiant sends her for all of her expenses.

As to the financial condition of Antonio Monroig, Puigdollers avers that he knows of his own knowledge that during recent years, and especially since the beginning of the European war, the prices of sugar have risen extraordinarily, increasing the incomes of sugar factories, and that on information and belief he knows that the Central Juanita of Bayamón, of which Antonio Monroig is one of the principal shareholders, has made enormous profits from sales of sugar and has much improved its finances.

After a comparative examination of the evidence submitted, we easily arrive at the conclusion that Georgina Puigdollers has less resources than formerly with which to meet her requirements, for on account of the inadequacy of the alimony allowed to cover her necessary expenses she has been compelled to spend the balance of the amount which, after the payment of some debts, remained to her from the

property of the conjugal partnership of Monroig-Puig- dollers, and that from the insignificant sum of $234.83 which she inherited from her mother, plus $500 which her father generously advanced on account of her inheritance with the object of aiding her, she obtains only $7.34, which, together with the alimony of $50, is clearly inadequate for her board, clothing and medical attendance in the social position which she occupies and bearing in mind the greater cost of living not only in the United States where she lives, but also in this Island.

The alimony, according to section 216 of the Civil Code which is made applicable to the present case by section 221, shall be proportioned to the resources of the person giving such support and to the necessities of the party receiving it, and shall be reduced or increased in proportion to the resources of the former and the necessities of the latter. The sum of $50 fixed for the alimony of Georgina Puig- dollers bears no proportion to the resources of Antonio Mon- roig and the necessities of his former wife, therefore instead of reducing or revoking the said alimony it should be in- creased to the sum of $75, as prayed for by the attorney for the appellant. That amount decidedly does not exceed the third part of Monroig's income.

It is immaterial that Antonio Puigdollers enjoys a com- fortable financial position, for not he but Antonio Monroig is obliged to comply with the provisions of section 177 of the Civil Code which we have transcribed herein, although it is but natural in a case like the present that a father would contribute generously to the support of a daughter, but the generous conduct of the father does not relieve the former husband, who provided grounds for a divorce, from comply- ing with the duty which the law imposes upon him.

For the foregoing reasons the judgment appealed from is reversed and another is rendered overruling the motion of Antonio Monroig and ordering that the alimony of $50 be increased to $75 monthly, and that this amount shall be

paid by Monroig to Georgina Puigdollers until further action, together with the costs in the trial court.

*Reversed and substituted.*

Justices Wolf, del Toro, Aldrey and Hutchison concurred.